### GROSS v. BELVIN.

No. 21016.  Opinion Filed June 28, 1932.

Rehearing Denied July 27, 1932.

A. K. Little and Burke & Trice, for plaintiff in error.

R. L. Evans and W. J. Belvin, for defendant in error.

KORNEGAY, J.  This is a proceeding in error to review the action of the lower court in refusing to confirm a sale of two 10-acre tracts of land belonging to the defendant, on an execution to collect the deficiency judgment in a mortgage foreclosure of adjoining lands.

The entire proceedings in the case appear in the case-made, and it appears that in the year 1918 the defendant borrowed $4,000 on 280 acres of land, and that on the 4th of April, 1928, judgment was entered for the amount of the mortgage debt and for order of sale covering 280 acres of land, 160 acres being in section 12 and the remainder adjoining in section 13. The parts omitted in the N.W.¼ of section 13 are the S.E.¼ of the N.E.¼ of the N.W.¼, and the S.W.¼ of the S.W.¼ of the N.W.¼, and the S.½ of the S.E.¼ of the N.W.¼.

There was a clause in the judgment showing that the plaintiff had elected to declare everything due and payable as of the 1st of January, 1927, and there was judgment for costs, abstract fees and attorney fees and the amount found due, making the total amount $4,706.80, plus attorney fees and costs, and judgment was entered for that amount to draw interest at 10 per cent. from the 27th of January, 1928, until paid. There was further judgment for selling without appraisement at the end of six months. The property appears to have been sold in that way, and there was a deficiency, followed by a general execution on the 29th of May, 1929, and levy upon the S.W.¼ of the S.W.¼ of the N.W.¼ and the S.E.¼ of the N.E.¼ of the N.W.¼, these being two 10-acre tracts owned by the mortgagor, but not included in the mortgage. This land was appraised at $10 an acre and was advertised and sold.

On the 8th of June, after the levy but before the sale, there was filed in the court by W. J. Belvin an instrument setting up the fact that those two tracts had been impressed with a homestead character, and the proceeds therefrom had been applied to the support of his family for 14 years prior thereto, and also a declaration of intention had and declared during said time to build a home on the S.W.¼ of the S.W.¼ of the N.W.¼ of section 13. There was a statement of having notified the attorneys of the execution creditor and of the officers holding the execution.

Objection was made to the sale of the land and the confirmation of the sale, and showing was made that this was all the land that the plaintiff, who was a head of the family, had. Testimony was taken, and it clearly appeared therefrom that this land had been bought with a view of using it as a homestead, and that the proceeds for

years had been applied to the support of the execution debtor and his family, part of the ground being enclosed with the ground that was mortgaged, and one 10 acres of it being on the outside, apparently.

Prior to foreclosure, the execution debtor had actually resided in the S.W.¼ of section 12, and during all the time that he was occupying the place that was mortgaged he got hay from one of these two 10 acres for family purposes, and cut ties and posts and family firewood from the other, and sold the ties and used the money to support his family, and he was at the time of testifying using those tracts for that purpose.

Proof was offered, but rejected by the court, of declarations of the execution debtor of intention to occupy and hold the land as a homestead, and of intention to build a residence on the hay tract, but the court ruled this out and proof was made of serving notice on the attorney on the 8th of June of the land having been impressed with homestead character, and its being filed in the court and a notice to the officers. Proof was made of intention to build upon the 10 acres and of present use and past use of proceeds for the family support, and also of objecting to the sale and giving public notice of homestead at the time of the sale, and on cross-examination it developed that he had been living there for 30 years, and that his wife was a Choctaw Indian whose land had been sold and which he had bought, and mortgaged. The attorney of the defendant in error offered to establish his part in the matter, beginning on the 8th of June, as to serving notice, etc., but it appeared to be admitted, and at the conclusion of the argument the court pronounced judgment as follows:

"The Constitution of this state gives a man 160 acres of land free from execution, and this should be given a liberal construction in order to carry out the purpose and the intention of the Constitution; that is, every man should have at least 160 acres of land. The policy of the state enunciated by the Constitution is that every man should have a home. I think we should refuse to confirm the sale in this case and recall the execution. I think the testimony is sufficient to show that this is a homestead."

A review and reversal of this judgment is here asked. Several authorities have been cited from this court, all of which have been examined. We think that the provisions of the Constitution and the trend of our decisions are such that no error was committed by the trial court in allowing this claim of exemption. The applicable section of the Constitution is section 1, article 12, as follows:

"Sec. 1. The homestead of any family in this state, not within any city, town, or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner. The homestead within any city, town, or village, owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner: Provided, That the same shall not exceed in value the sum of five thousand dollars, and in no event shall the homestead be reduced to less than one-quarter of an acre, without regard to value; And Provided Further, That in case said homestead is used for both residence and business purposes, the homestead interest therein shall not exceed in value the sum of five thousand dollars: Provided. That nothing in the laws of the United States, or any treaties with the Indian Tribes in the state, shall deprive any Indian or other allottee of the benefit of the homestead and exemption laws of the state: And Provided Further, That any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired."

A great many cases are cited under this section. (Section 13671, Okla. Stat. 1931.) Recently we had occasion to review, in the case of Clay v. Brown, No. 20909, opinion filed May 24, 1932, and not yet officially reported, our decisions upon the subject of homestead, and we do not deem it necessary to again review them. Liberality in the construction of homestead rights has been the rule, and article 12 is but a modification of the old Territorial law. and it will be observed that the rural exemption from execution for debt can be in one or more parcels, and the owner has the right of selection. That right appears to have been not only declared long before, but to have been formally exerted in this case.

The case here involved is that 280 acres of land. that were deemed ample security for the debt, were mortgaged with a provision for sale without appraisement, and later when the debtor did not pay, there was a foreclosure and a buying in by some one followed by an execution to make the balance of the debt out of 20 acres of land that had been used by the judgment debtor for the support of his family during the time that he was occupying the mortgaged premises. We are unable to say that the court below did not follow both the letter and the spirit of the Constitution in this case in allowing the debtor to keep a little something out of the financial catastrophe.

The judgment of the lower court is accordingly affirmed.

HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., CLARK, V. C. J., and RILEY, J., absent.